**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

CHARLOTTE BERGDOLL,

     Plaintiff,

       v.

THE CITY OF YORK, *ET AL.,*

     Defendants.

CIVIL ACTION NO. 1:08-CV-01879

(JUDGE CAPUTO)

## <u>MEMORANDUM</u>

Presently before the Court are motions to dismiss Plaintiff's Complaint filed by Defendants County of York and Stanley Rebert, (Doc. 9), and Defendants City of York, the Honorable John S. Brenner, Mark L. Whitman, and Wesley Kahley, (Doc. 13).  For the reasons detailed below, Defendants' motions will be granted.

The Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

## BACKGROUND

Plaintiff states in her Complaint that she is the owner, operator, and manager of Cherry Lane Realty, Inc., a business operating in the city of York, Pennsylvania. (Compl., Doc. 1 ¶ 4.)  She alleges that on October 12, 2006, she was called to a property managed by Cherry Lane Realty located at 745 West Poplar Street in York. (*Id.* ¶ 13.) At the time she was called, Plaintiff avers that Officer A. Baez, a police officer for the City of York, was at the property performing an inspection of the house that was not authorized by either the tenant or the Plaintiff. (*Id.* ¶¶ 13-15.) The Plaintiff claims that upon her arrival at the property officer Baez unreasonably approached, seized and physically attacked and forced the Plaintiff face down on the porch. (*Id.* ¶ 17.)  While she was lying face down on the porch, the Plaintiff

alleges that the Defendant officer restrained Plaintiff by putting his knee in her back and abusively placed her in handcuffs even though she did not resist the officer or exhibit any signs of violence.  (*Id.* ¶¶ 18, 19.)  Plaintiff alleges that she was subsequently transported to the City of York Police Department where she was detained.  (*Id.* ¶ 20.)  She also claims that Officer Baez had no warrant for her arrest, no probable cause for her arrest, and no other legal basis, cause or excuse to seize, strike or detain the Plaintiff.  (*Id.* ¶ 23.)  On October, 12, 2006, the day of the incident, Plaintiff alleges that she filed a complaint with the Department of Public Safety for the City of York, and alleges that this complaint was not addressed or investigated and was ultimately used by the Defendants in an attempt to prosecute Plaintiff.  (*Id.* ¶¶ 25, 26.)  On October 13, 2008 the Plaintiff was charged with disorderly conduct pursuant to 18 Pa. C.S. § 5503.  (*Id.* ¶ 27.)  On May 2, 2007 a summary trial was held before Magisterial District Judge Daniel B. Garber who dismissed the disorderly conduct charges against Plaintiff.  (*Id.* ¶¶ 28, 29.)

Plaintiff states that due to Defendants' actions she has suffered a violation of her rights guaranteed by the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution.  (*Id.* ¶ 30a.)  She also states that she suffered a loss of liberty, physical pain and suffering, and financial loss.  (*Id.* ¶ 30b-d.)  Based on these averments, the Plaintiff filed a her Complaint (Doc. 1) in the current case on October 10, 2008.  The Complaint brings six counts against Defendants, including two counts brought pursuant to 42 U.S.C. § 1983 for the alleged violations off Plaintiff's constitutional rights by Officer Baez, the City of York, Mayor John S. Brenner, Police Commissioner Mark Whitman, Police Captain Wesley Kahley, the County of York, and District Attorney H. Stanley Rebert.  (*Id.* ¶¶ 32-35, 41-48.)  The Complaint also includes individual counts of Assault and Battery against Officer

2

Baez (*Id.* ¶¶ 36-38), False Arrest and Illegal Detention against Officer Baez (*Id.* ¶¶ 39, 40), Malicious Prosecution against all Defendants (*Id.* ¶¶ 49-53), and claims pursuant to the Pennsylvania Constitution brought against all Defendants (*Id.* ¶¶ 54-57).  Plaintiff asks this Court to grant a jury trial and judgment against the Defendants that includes compensatory and punitive damages, Plaintiff's costs of litigation, reasonable attorney's fees, and injunctive relief.  (*Id.* ¶¶ 57a - 57f.)

Defendants County of York and District Attorney H. Stanley Rebert filed their motion to dismiss (Doc. 9) along with an accompanying brief in support (Doc. 10) on October 20, 2008.  Defendants The City of York, Mayor John S. Brenner,  Police Commissioner Mark Whitman, and Police Captain Wesley Kahley filed their motion to dismiss (Doc. 13) on October 29, 2008 and a corresponding brief in support (Doc. 17) on November 6, 2008. Plaintiff filed briefs in opposition (Docs. 19, 20) to these motions on November 19, 2008 and November 24, 2008.  Defendants did not file briefs in reply.  Accordingly, Defendants' motions have been thoroughly briefed and are currently ripe for disposition.

## LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, Plaintiff has not plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 127 S.Ct. 1955, 1960, 167 L.Ed.2d 929 (2007), meaning, enough factual allegations "to raise a reasonable expectation that discovery will reveal evidence of" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (requiring

3

complaint to set forth information from which each element of a claim may be inferred).  In light of Federal Rule of Civil Procedure 8(a)(2), the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Erickson v. Pardus*, --- U.S. ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam).  "[T]he factual detail in a complaint [must not be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8."  *Phillips*, 515 F.3d at 232; *see also Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint and matters of public record.  *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994).  The Court may also consider "undisputedly authentic" documents where the plaintiff's claims are based on the documents and the defendant has attached a copy of the document to the motion to dismiss.  *Id.*  The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998), nor credit a complaint's "bald assertions" or "legal conclusions."  *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).

When considering a Rule 12(b)(6) motion, the Court's role is limited to determining whether the plaintiff is entitled to offer evidence in support of the claims.  *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).  The Court does not consider whether the plaintiff will ultimately prevail.  *See id.*  The defendant bears the burden of establishing that the plaintiff's complaint fails to state a claim upon which relief can be granted.  *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

4

**DISCUSSION**

In her Complaint, Plaintiff brings three counts against the City of York, Mayor John S. Brenner, Police Commissioner Mark Whitman, Captain of Operations Wesley Kahley, the County of York, and District Attorney H. Stanley Rebert.  The first of these counts (Count IV) is brought pursuant to 42 U.S.C. § 1983 and alleges that the Defendants (1) developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of persons in the City and County of York, (2) had an administrative policy or custom to inadequately investigate citizen complaints against police misconduct, (3) failed to require or provide in-service training of officers known to have engaged in police misconduct, (4) failed to instruct, supervise, or control police officers to refrain from unlawfully harassing citizens, and (5) had reason to know, because of these alleged polices and customs, that Officer Baez would engage in conduct in violation of Plaintiff's rights.  Plaintiff's second count against these Defendants (Count V) alleges that they, along with Officer Baez, maliciously filed and prosecuted charges against Plaintiff to gain an advantage over the Plaintiff in civil suits that were likely to arise from the incident occurring on October 12, 2006.  The third and final count  (Count VI) that Plaintiff brings against the Defendants with motions currently before the Court, alleges that these Defendants violated Plaintiff's rights under the Pennsylvania constitution.

### I. Defendants H. Stanley Rebert and the County of York

#### A.     Count IV of Plaintiff's Complaint

Count IV of Plaintiff's Complaint brings claims pursuant to 42 U.S.C. § 1983 against the County of York ("the County"), and District Attorney H. Stanley Rebert based on allegations that these Defendants developed or acquiesced to policies and customs

depriving persons in York County of the rights guaranteed by the United States Constitution.

"In light of [§ 1983's] imposition of liability on one who 'subjects a person, or causes that person to be subjected,' to a deprivation of federal rights, [the Supreme Court has] concluded that [§ 1983] 'cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor.'" *Board of the County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 403 (1997)  (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 692 (1978)).  The Supreme Court has "consistently refused to hold municipalities liable under a theory of *respondeat superior*."  *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 818 (1985) (plurality opinion); *id.* at 828 (opinion of Brennan, J.); *Pembaur v. Cincinnati*, 475 U.S. 469, 478-479 (1986); *St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) (plurality opinion); *id.*, at 137 (opinion of Brennan, J.); *Canton v. Harris*, 489 U.S. 378, 392 (1989)).  Rather, "in *Monell* and subsequent cases [the Supreme Court has] required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."  *Id.* (citing *Monell*, 436 U.S. at 694; *Pembaur*, 475 U.S. at 480-481; *Canton*, 489 U.S. at 389).  However,

> it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality.  The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Id.* at 404 (emphasis in original).  The Third Circuit Court of Appeals has articulated a similar standard for individual defendants in § 1983 actions:

> An individual government defendant. . . must have personal involvement in the alleged wrong doing; liability cannot be predicated solely on the operation of

6

respondeat superior.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.

*Evancho v. Fischer*, 423 F.3d 347, 353 (3d Cir. 2005) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

In the brief supporting their motion to dismiss, the County of York and Rebert argue that Count IV of Plaintiff's Complaint, brought pursuant to § 1983, fails to state a claim against either the County or Rebert because the Plaintiff has not and cannot establish the nexus between the violation of rights and the Defendants required for § 1983 liability.  (Defs.' County & Rebert Br. in Supp., Doc. 10, at 3.)  The Defendants further argue that

> neither Rebert nor the County ever acted as an employer of Baez.  Only the [York City Police Department] and the city are responsible for the training and discipline of individual [York City Police Department] police officers.  Only the [York City Police Department] and the city are responsible for the creation of policies that relate to the conduct and discipline of the [York City Police Department] officers.

(*Id*.)  Plaintiff responds by noting that her Complaint contains statements that the County and Rebert, along with all other defendants, (1) engaged in a systematic policy and custom of advising the York City Police Department how to investigate allegations of police misconduct and  (2) developed or maintained policies and customs exhibiting deliberate indifference to constitutional rights of persons in York County.  Plaintiff argues that these allegations are sufficient to satisfy the liberal notice pleading standard established by Federal Rule of Civil Procedure 8(a), which the Supreme Court stated to be the correct standard for § 1983 pleading requirements in its decision in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*. 507 U.S. 163 (1993).

However, this Court "is not required to credit a 'bald assertion' when deciding a motion to dismiss under this notice pleading standard, and the plaintiff cannot use allegation of civil

7

right violations that amount to nothing more than 'conclusory, boilerplate language' to show that [she] may be entitled to relief under § 1983." *Young v. New Sewickley Township*, 160 Fed. Appx. 263, 266 (3d Cir. 2005) (unpublished) (quoting *Evancho v. Fischer,* 423 F.3d 347, 354-355 (3d Cir. 2005)).   Count IV of Plaintiff's Complaint makes numerous broad allegations against all Defendants, including Rebert and the County, and the Court finds that these allegations are the sort of conclusory statements that are insufficient to support a claim under § 1983.   Without offering any further facts or support, Plaintiff states that "the Defendants jointly and/or severally developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of persons in the City of York or York County, which caused the violation of Plaintiff's rights." (Compl. ¶ 42) Similarly Plaintiff avers that "[i]t was the administrative policy and/or custom of the Defendants to jointly and/or severally to inadequately and improperly investigate citizen complaints of police misconduct, and acts of misconduct were instead jointly and/or severally tolerated by the Defendants." (*Id.* ¶ 43.)   Both of these statements are broad conclusions that Rebert and the County violated Plaintiff's rights and the Court  is unable to find the appropriate factual development needed to render these claims plausible.  *See  Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2nd Cir. 2007) (stating that the Supreme Court's decision in *Twombly,* 550 U.S. 554, requires a party to "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible").   Accordingly, Plaintiff's Count IV claims against Defendants the County of York and H. Stanley Rebert will be dismissed.

## B.      Count V of Plaintiff's Complaint

Count V of Plaintiff's Complaint brings claims of malicious prosecution against all Defendants, including the County of York and Rebert.

8

The Third Circuit Court of Appeals has traditionally stated that "[t]he elements of liability for the constitutional tort of malicious prosecution under § 1983 coincide with those of the common law tort." *Lee v. Mihalich*, 847 F.2d. 66, 70 (3d Cir. 1988).  However, the United States Supreme Court, in a plurality opinion, effectively added an additional requirement that a plaintiff bringing a malicious prosecution claim allege a violation of his or her Fourth Amendment procedural due process rights.  *See Albright v. Oliver*, 510 U.S. 266, 273-274 (1994)(Rehnquist, C.J.) (stating that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims. . . The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it.").  Accordingly, post-*Albright*, the Third Circuit Court of Appeals has held that "a plaintiff asserting a malicious prosecution claim must show 'some deprivation of liberty consistent with the concept of seizure.'" *Gallo v. City of Philadelphia*, 161 F.3d 217, 222 (3d Cir. 1998) (quoting *Singer v. Fulton County Sherriff*, 63 F.3d 110, 116 (2d Cir. 1995)).  In addition to showing such a deprivation of liberty, a plaintiff bringing a malicious prosecution claim must, under Pennsylvania law, show that "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice." *Donahue v. Gavin*, 280 F.3d 371, 379 (3d Cir. 2002).

In her Complaint, the Plaintiff states that, subsequent to the October 12, 2006 incident, she was charged with disorderly conduct under 18 Pa.C.S. § 5503 and later appeared in trial before a state magisterial judge. (Compl. ¶¶ 27, 28, 52.)  The Court finds

that these statements sufficiently allege that the Plaintiff was "seized" within the meaning of the Fourth Amendment.  *See Albright,* 510 U.S. at 279 (Ginsburg, J.) (stating that a defendant bound to appear in court and answer the state's charges is, indeed "seized" for trial and arrested in his movements).   The Plaintiff's Complaint further avers that the proceeding initiated against Plaintiff ultimately ended in Plaintiff's favor (Compl. ¶ 29), that the charges were brought against Plaintiff without the requisite probable cause (Compl. ¶ 27), and that the charges were brought with the intent of gaining an advantage over her in subsequent litigation (Compl. ¶ 50).  Accordingly, the Court finds that Plaintiff has plead the basic, required elements of a malicious prosecution claim.

However, the Court finds that the Plaintiff cannot maintain her malicious prosecution claim against either Rebert or the County.  This is because, in order to prevent "harassment by unfounded litigation [that] would cause a deflection of [a] prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust," the United States Supreme Court has held that the prosecutorial function is entitled to absolute immunity from suits seeking monetary relief.  *Imbler v. Pachtman*, 424 U.S. 409, 423 (1976).   When granting this immunity, the Supreme court "recognize[d] that the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom" and that "[a] prosecuting attorney is required constantly, in the course of his duty as such, to make decision on a wide variety of sensitive issues. . .."  *Id.* at 431 n.33.  "At some point, and with respect to some decision, the prosecutor no doubt functions as an administrator rather than as an officer of the court."  *Id.*  While prosecutors are not afforded absolute immunity for administrative functions, "in initiating a

10

prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages." *Id.* at 431.

Plaintiff argues that Rebert should not be afforded this prosecutorial immunity because he, along with York County, acted in a non-prosecutorial manner to develop and maintain policies and customs exhibiting a deliberate indifference to the constitutional rights of persons such as the Plaintiff.  (Pl.'s Br. in Opp., Doc. 19 at 10.)  This argument, however, is simply a restatement of the broad, conclusive arguments Plaintiff offers in support of her Count IV claims that the Defendants collectively created and acquiesced to a culture or policies contributing to the alleged violations of Plaintiff's rights.  Moreover, this argument does not address the fact that Rebert's decision to initiate prosecution and efforts to present the case against Plaintiff are precisely the type of activities entitled to absolute prosecutorial immunity by the Supreme Court's *Imbler* decision.  Because Defendant Rebert clearly engaged in prosecutorial functions when bringing charges and presenting a case against the Plaintiff, and because is entitled to absolute prosecutorial immunity for these functions, the Court will dismiss Count V of Plaintiff's Complaint with respect to Defendant Rebert.

Plaintiff supports her malicious prosecution claim against the County of York by casting Defendant Rebert as an administrator with supervisory authority over all law enforcement operations in both the City and County of York.  (Compl. ¶ 11.)  However, as the Defendants correctly note in their supporting brief, "[t]he County has no authority or power to direct or control the District Attorney with regard to prosecutions."  (Defs.' Br. in Supp., Doc.10 at 5.)  Furthermore, Count V of Plaintiff's Complaint identifies all Defendants without providing any allegations with regard to how these Defendants, either individually, or in concert conducted themselves in such a way to maliciously prosecute the Plaintiff.  By

11

providing nothing more than a bald assertion that all Defendants engaged in a malicious prosecution, Plaintiff fails to provide the necessary allegations of fact to state a plausible claim.  Thus, the Court will also dismiss Count V of Plaintiff's Complaint with respect to the County of York.

### C.      Count VI of Plaintiff's Complaint

Count VI of Plaintiff's Complaint alleges that all Defendants, including the County and Rebert violated Plaintiff's rights as guaranteed by the Pennsylvania Constitution.

The Defendants argue that the Pennsylvania Political Subdivision Tort Claims Act ("Tort Claims Act"), 42 Pa.C.S § 8541 et seq., bars recovery against Rebert and the County on these claims.  The Tort Claims Act states that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."  42 Pa.C.S. § 8541.  There are only eight exceptions when local agencies can be held liable for their acts.  These exceptions include: (1) vehicle liability; (2) care, custody, or control of personal property; (3) real property; (4) trees, traffic control, or street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) fire, custody or control of animals.  *Id*. at § 8542(b).  Government immunity under the Tort Claims Act can also be abrogated if it is judicially determined that a government employee caused the injury and the act was intentional.  *Id*. § 8550.

The Plaintiff argues that the immunity provided by the Pennsylvania Tort Claims Act should not apply.  Plaintiff supports this argument by citing to portions of Count VI of her Complaint that state that the Defendants acted negligently and intentionally.  Once again, however, the Court finds that Plaintiff's Complaint fails to provide sufficient factual averments to state a plausible claim.  Count VI of Plaintiff's Complaint does nothing but state that the

Defendants, through their conduct, committed several common law torts against Plaintiff in violation of the Constitution of the Commonwealth of Pennsylvania and other Pennsylvania laws.  These broad statements, without further averments providing some alleged factual basis to the claims, are insufficient to either abrogate immunity under the Pennsylvania Tort Claims Act or state a plausible claim.  Since Plaintiff's Complaint fails to state any factual background suggesting how the Defendants acted in a willful or intentional manner sufficient to abrogate the Pennsylvania Tort Claims Act's broad grant of immunity, Plaintiff's Count VI claims will be dismissed with respect to Rebert and the County of York.  Since no claims against either of these Defendants remain, the Court will also dismiss H. Stanley Rebert and the County of York from this action.

## II.     Defendants The City of York, Mayor John S. Brenner, Mark L. Whitman, and Wesley Kahley

In their motion and supporting brief, Defendants the City of York, Mayor John S. Brenner, Mark L. Whitman, and Wesley Kahley ("Moving Defendants") argue that they are entitled to qualified immunity against the claims in Counts IV, V, and VI of Plaintiff's Complaint.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)*; see accord Nixon v. Fitzgerald*, 457 U.S. 731 (1982). "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  "The privilege is 'an immunity from suit rather than a mere defense to liability; and

13

like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'"

*Id*. at 200-201 (quoting *Mitchell*, 472 U.S. at 526).  When determining an issue of qualified immunity, a court's initial inquiry is to consider the question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  *Id*. at 201; *see accord Siegert v. Gilley*, 500 U.S. 226, 232 (1991).

> If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable.

*Saucier*, 533 U.S. at 201.  Plaintiff's Complaint alleges that the Moving Defendants denied Plaintiff's First, Fourth, Fifth and Fourteenth Amendment rights.  (Compl. ¶ 1.)  Accordingly, applying the method of analysis endorsed by the Supreme Court in *Saucier*, the Court will first determine whether the Plaintiff's Complaint presents plausible claims that Plaintiff was denied these rights.  If the Court determines that Plaintiff has been denied a constitutional right, it will proceed to the second step of the analysis to determine if the right was clearly established and the Moving Defendants could have reasonably believed that the particular conduct at issue was lawful.  *See Butler v. Elle*, 281 F.3d 1014, 1020 (9th Cir. 2002) (articulating a two-pronged approach to the second half of the test endorsed by the Supreme Court in *Saucier*).

### A.    Plaintiff's First Amendment Claims

"In order to plead a retaliation claim under the First Amendment, a plaintiff must

allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Township*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).

The Moving Defendants argue that the Plaintiff fails to identify any activity protected by the First Amendment, fails identify any retaliatory conduct taken by the Moving Defendants, and fails to identify the necessary causal link between the constitutionally protected conduct and the alleged retaliatory action. The Court both disagrees and agrees with the Defendants. In her Complaint, the Plaintiff states that she filed a complaint with Department of Public Safety against Officer Baez following the October 12, 2006 incident, and further states that this complaint was later used to prosecute her for disorderly conduct. Thus, the Court believes that the Plaintiff clearly identifies activity protected by the First Amendment and identifies an action that is conceivably retaliatory. However, the Plaintiff fails to develop any link between her protected conduct and the alleged retaliatory action. Plaintiff's Complaint contains no statements detailing how any of the Moving Defendants actually took the allegedly retaliatory action (bringing disorderly conduct charges against Plaintiff and presenting a case against Plaintiff on those charges). These decisions were, as discussed *supra*, decisions undertaken by the office of the District Attorney who is entitled to absolute immunity for the performance of his prosecutorial duties. Neither Plaintiff's Complaint nor her brief in opposition to Defendants' motion supplies any factual averments stating how any of the Moving Defendants usurped the prosecutorial role or was even significantly involved in her prosecution. Without properly alleging some nexus between the

15

protected activity and the alleged retaliatory action, Plaintiff's Complaint, once again merely states a conclusion and fails to raise a plausible claim that her First Amendment rights were violated by the Moving Defendants.

### B.    Plaintiff's Fourth Amendment Claims

In order to successfully bring a claim for malicious prosecution under the Fourth Amendment, a plaintiff must show "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [plaintiff's] favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with a concept of seizure as a consequence of a legal proceeding." *Johnson v. Knorr*, 477 F. 3d 75 (3d Cir. 2007).  Defendants concede that the criminal proceeding at issue here ended in the Plaintiff's favor, thus satisfying the second *Johnson* factor, but argues that the Plaintiff's Complaint fails to meet the other prongs.  Even though the Court already determined in this memorandum's discussion of the Supreme Court's *Albright v. Oliver* decision, *supra*, that the Plaintiff was "seized" within the meaning of the Fourth Amendment, the Court agrees that Plaintiff's Complaint fails to satisfy the first *Johnson* factor.  As already discussed in detail by this memorandum, Plaintiff's Complaint makes no statements pertaining to how any of the Moving Defendants either took over or influenced the District Attorney's prosecutorial role and caused disorderly conduct charges to be filed and pursued against Plaintiff.  Accordingly, Plaintiff has not supplied sufficient allegations of fact to state a plausible claim that the Moving Defendants maliciously prosecuted her under the Fourth Amendment.

"To state a claim for excessive force as an unreasonable seizure under the Fourth

Amendment, a plaintiff must show that a "seizure" occurred and that it was unreasonable." *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999) (citing *Brower v. County of Inyo*, 489 U.S. 593, 599 (1989)).  The Plaintiff has clearly alleged sufficient facts to establish that she was seized by Officer Baez during the October 12, 2006 incident.  There is no question that at some point, the Plaintiff was restrained, handcuffed, arrested, and taken to the York City Police Department.  Thus, the Court believes that the Plaintiff has sufficiently plead a Fourth Amendment claim of excessive force against Officer Baez.

The Court, however, cannot find that Plaintiff has sufficiently plead a Fourth Amendment excessive force claim against any of the Moving Defendants.  "[P]ersonal involvement . . . is an indispensable element of a Fourth Amendment claim of excessive force,"  *Reed v. Stainiero*, No. 06-CV-3496, U.S. Dist. LEXIS 84101 *30 (D.N.J. 2007), and Plaintiff's Complaint fails to make any allegations that any of the Moving Defendants were present at the time of Plaintiff's arrest. Instead, Plaintiff argues that the Moving Defendants violated her Fourth Amendment rights by maintaining policies and customs exhibiting an indifference to citizens' constitutional rights.  Under § 1983, a municipality can be found liable for constitutional violations when the government's policy or custom inflicts the injury. *Canton*, 489 U.S. at 385.  Plaintiff's Complaint identifies polices or customs allegedly causing the Plaintiff injury, notably: (1) deliberate indifference to the need for police training, supervision, and discipline; (2) tolerating a pattern of abuse of police power; (3) failure to adequately investigate citizen complaints; and (4) filing charges against citizens without probable cause.  (Compl. ¶¶ 26, 42-47, 50-56.)

When discussing the requirements for municipal liability due to policy or custom, the Supreme Court has stated that

17

> If a program does not prevent constitutional violations, municipal decision-makers may eventually be put on notice that a new program is called for.  Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action–the "deliberate indifference"–necessary to trigger municipal liability.

*Board of the County Commissioners v. Brown*, 520 U.S. 397, 407 (1997) (citing *Canton*, 489 U.S. at 390 n.10).  "[T]he existence of a pattern of  tortious conduct by inadequately trained employees may tend to show that the lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident, is the 'moving force' behind the plaintiff's injury." *Id.* at 407-408 (citing *Canton*, 489 U.S. at 390-391).  More generally stated:

> A city may be held liable for an official policy or a custom which proximately causes a constitutional deprivation. A single incident violating a constitutional right done by a governmental agency's highest policymaker for the activity in question may suffice to establish an official policy. A single incident by a lower level employee acting under color of law, however, does not suffice to establish either an official policy or a custom. However, if custom can be established by other means, a single application of the custom suffices to establish that it was done pursuant to official policy and thus to establish the agency's liability. Custom may be established by proof of knowledge and acquiescence.

*Fletcher v. O'Donnell*, 867 F.2d 791, 793-794 (3d Cir. 1989) (citations omitted).

Plaintiff's Complaint, while clearly alleging facts that a lower level employee acting under the color of law violated Plaintiff's rights during the October 12, 2006 incident, does not provide any allegations of fact suggesting that the city or any of the Moving Defendants had reason to believe that Officer Baez or any other employee of the York City Police Department would participate in behaviors violating citizens' constitutional rights.  Plaintiff's Complaint fails to mention any prior incidents involving Officer Baez or other police officers involving allegations of excessive force or otherwise inappropriate conduct.  Nor does

Plaintiff's Complaint supply any allegations of fact concerning prior incidents when the City of York, its officials, or members of the City's police department filed and pursued charges against a citizen without probable cause in retaliation for a complaint or request for an investigation of police conduct.  As the Court has stated previously in this memorandum, the Plaintiff's conclusive statements that Defendants committed a violation of her rights are insufficient to maintain a claim unless they are supported by further allegations of fact linking the Defendants to the stated harm.  Without this further amplification, the Court cannot read Plaintiff's claims as plausible.

### C.    Plaintiff's Fifth Amendment Claims

The Fifth Amendment to the United States Constitution states:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land and naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. CONST. amend. V.  The Supreme Court has stated that the Fifth Amendment protects against self-incrimination and "that a violation of the constitutional right against self-incrimination occurs only if one has been compelled to be a witness against himself in a criminal case."  *Chavez v. Martinez*, 538 U.S. 760, 770 (2003).  Supreme Court decisions "have created prophylactic rules designed to safeguard the core constitutional right protected by the Self-Incrimination Clause."  *Id.*  These safeguards include the so-called "exclusionary rule" established by the Court's decision in *Miranda v. Arizona*, 384 U.S. 436 (1966) and the Court's decision in *Kastigar v. United States*, 406 U.S. 441 (1972) establishing an evidentiary

privilege protecting witnesses from being forced to give testimony unless that testimony has been immunized from use in future criminal proceedings where the witness might appear as the accused.  *Chavez*, 538 U.S. at 770-771.

In the present case, the Plaintiff alleges that the Defendants violated her right to be free from being a witness against herself when the contents of the complaint she filed with the City of York Department of Public Safety following the October 12, 2006 incident were presented as evidence against Plaintiff when she stood trial for disorderly conduct.  Plaintiff, however, does not allege that she was ever compelled to make the statements contained in her complaint to the Department of Public Safety.  Instead, the statements in Plaintiff's Complaint that she filed the complaint following the incident on October 12, 2006 impart that she made the statements contained in the complaint voluntarily and after she was released from custody.  As the Supreme Court stated in *Miranda* voluntary statements made by criminal defendants "remain a proper element in law enforcement."  *Miranda*, 384 U.S. at 478.  Since the Plaintiff's Complaint provides no factual allegations that she was either compelled by the City of York Police to file her complaint with the Department of Public Safety or that she was in custody at the time she made the statements contained in that complaint, the Court cannot find that Plaintiff suffered a violation of her Fifth Amendment rights.

## D.    Plaintiff's Fourteenth Amendment Claims

The Fourteenth Amendment states, in relevant part, that "[n]o State shall . . .deprive any person of life, liberty or property, without due process of the law." U.S CONST. amend XIV, § 1.  "Historically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property."  *Daniels v.*

*Williams*, 474 U.S. 327, 331 (1986).  "This history reflects the traditional and common-sense notion that the Due Process Clause . . . was 'intended to secure the individual from the arbitrary exercise of the powers of government.'" *Id.* (quoting *Hurtado v. California*, 110 U.S. 516, 527 (1884)).  "By requiring the government to follow appropriate procedures when its agents decide to 'deprive any person of life, liberty, or property,' the Due Process Clause promotes fairness in such decisions. And by barring certain government actions regardless of the fairness of the procedures used to implement them, . . .it serves to prevent governmental power from being 'used for purposes of oppression.'" *Id.* at 331-332 (quoting *Murray's Lessee v. Hoboken Land & Improvement Co.*, 18 How. 272, 277 (1856)).

In the present case, the Plaintiff argues that the Defendants have encouraged, tolerated, ratified and have been deliberately indifferent to policies and customs within the City of York Police Department that violate Plaintiff's, and other citizens', rights to life, liberty and the pursuit of happiness.  The Plaintiff's Complaint, however, does not make allegations of fact that are needed for the Court to determine that Plaintiff has suffered a violation of her Fourteenth Amendment rights.  Plaintiff does not aver that she has been deprived of either life or liberty.  Rather, her Complaint states that she was acquitted when she was brought to trial on disorderly conduct charges.  Furthermore, Plaintiff does not represent that she was denied process.  Instead, she states several times in her Complaint that charges were formally filed, that she appeared before a properly seated judge, and was acquitted of the charges.  Accordingly, the Court is unable to find any violation of Plaintiff's Fourteenth Amendment Right of due process.

In summary, the Plaintiff's Complaint fails to sufficiently allege any constitutional violation resulting from the conduct of the Moving Defendants.  Without any plausible claims

suggesting a constitutional violation, the Court does not need to consider the second step of the *Saucier* qualified immunity analysis and will dismiss all federal claims brought against Defendants the City of York, the Honorable John S. Brenner, Mark L. Whitman and Wesley Kahley.

### E.    Plaintiff's State Law Claims

As already discussed, *supra*, The Pennsylvania Tort Claims Act states that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."  42 Pa.C.S. § 8541.  This broad grant of immunity for local agencies is subject only to narrow exceptions not implicated here, and can only be abrogated by a judicial determination that a government official acted intentionally to cause an injury to a plaintiff.

Once again, the Plaintiff argues that the immunity provided by the Pennsylvania Tort Claims Act should not apply to the Defendants because they acted intentionally to create or condone policies causing citizens' rights to be violated.  As the Court has already noted, Plaintiff's Complaint does nothing but state that the Defendants, through their conduct, committed several common law torts against Plaintiff in violation of the Constitution of the Commonwealth of Pennsylvania and other Pennsylvania laws.  Conclusive statements that provide no supporting factual allegations are insufficient to state a plausible claim that the Defendants' behavior warrants an abrogation of the immunity provided by the Tort Claims Act.  Accordingly, Plaintiff has failed to appropriately state claims against the Moving Defendants with respect to the Pennsylvania Constitution and other statutes, and the Court will dismiss these claims against all Moving Defendants.

Since no claims, either state or federal, remain with respect to Defendants the City

of York, the Honorable John S. Brenner, Mark L. Whitman and Wesley Kahley, these Defendants will be dismissed from the current case.

## CONCLUSION

For the reasons discussed above, the motions to dismiss filed by Defendants County of York and District Attorney H. Stanley Rebert, (Doc. 9), and Defendants the City of York, the Honorable John S. Brenner, Mark L. Whitman and Wesley Kahley, (Doc. 13), will be granted.  Plaintiff's claims (Counts I, II, III, V, and VI) against Officer Baez remain in this case.

An appropriate order follows.


 January 5, 2008                      /s/ A. Richard Caputo
Date                                          A. Richard Caputo
                                               United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

CHARLOTTE BERGDOLL,

      Plaintiff,

         v.

THE CITY OF YORK, *ET AL.*,

      Defendants.

CIVIL ACTION NO. 1:08-CV-01879

(JUDGE CAPUTO)

## ORDER

**NOW**, this __5th__ day of January, 2009, **IT IS HEREBY ORDERED** that:

1. Defendants County of York and H. Stanley Rebert's Motion to Dismiss (Doc. 9) is **GRANTED**.

2. Defendants County of York and H. Stanley Rebert are **DISMISSED** from this case.

3. Defendants The City of York, The Honorable John S. Brenner, Mark L. Whitman, and Wesley Kahley's Motion to Dismiss (Doc. 13) is **GRANTED**.

4. Defendants The City of York, The Honorable John S. Brenner, Mark L. Whitman, and Wesley Kahley are **DISMISSED** from this case.

          /s/ A. Richard Caputo
          A. Richard Caputo
          United States District Judge