**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHARLOTTE BERGDOLL, | |
| Plaintiff, | CIVIL ACTION NO. 3:08-CV-1879 |
| v. | (JUDGE CAPUTO) |
| CITY OF YORK, THE HONORABLE JOHN S. BRENNER, MAYOR, Individually and as Mayor for the City of York, MARK L. WHITMAN, Individually and as Police Commissioner for the City of York, WESLEY KAHLEY, Individually and as Police Captain of Operations for the City of York, POLICE OFFICER A. BAEZ, Individually and as a Police Officer for the City of York, COUNTY OF YORK, H. STANLEY REBERT, Individually and as District Attorney for the County of York, | |
| Defendants. | |

**MEMORANDUM**

Presently before the Court are Motions for Summary Judgment brought by Defendants County of York, Officer Baez, Police Commissioner Whitman, Police Captain Kahley, and City of York (Docs. 58 and 72), as well as a Motion to Disqualify Counsel brought by Defendant County of York (Doc. 55). For the reasons set forth below, Officer Baez's Motion for Summary Judgment will be granted in part and denied in part, and the Summary Judgment Motions of the other Defendants will be granted. Finally, the Motion to Disqualify Counsel will be denied.

**BACKGROUND**

The instant suit stems from an incident that occurred on October 12, 2006. York City Police Officer Andrew Baez responded to a call to check on welfare at 745 West Poplar Street while on traffic car duty. When he arrived at the scene, a woman named Cassandra

Whitted identified herself. Charlotte Bergdoll, who worked for Cherry Lane Realty, the manager of the property, then arrived at the residence. There are divergent accounts of what happened next. Officer Baez testified that Ms. Bergdoll immediately started yelling and cursing and became verbally abusive to him and to Ms. Whitted and that he told Ms. Bergdoll she had to leave the residence. In her deposition, Ms. Bergdoll denied using profanity but did state that she asked Officer Baez who he was "screwing" that he had to respond to code violations. Officer Baez then told Ms. Bergdoll she was under arrest According to Ms. Bergdoll, even though she immediately stopped and put her hands behind her back in order to be handcuffed, Officer Baez forcefully pushed her to the ground and put his knee into her back, kneeling on top of her and putting her in handcuffs while she screamed for help. In contrast, Officer Baez testified that Ms. Bergdoll pulled away from him when he was leading her onto the porch and resisted arrest while the two struggled on the porch. Officer Baez further testified that he finally had to put Ms. Bergdoll to the ground and that she continued to scream and resist while Officer Bergdoll kneeled on her and called for back-up. Another police officer then arrived on the scene and Ms. Bergdoll was arrested for disorderly conduct. At the police station, Ms. Bergdoll filed a private citizen complaint against Officer Baez, which was investigated by William Follmer of the York City Police Department Internal Affairs Department. After Mr. Follmer left Internal Affairs, the file was reviewed by Philip Roberts, who testified that there was nothing in Officer Baez's history that would have alerted anyone to his being prone to the use of excessive force or violating citizens' rights. Assistant District Attorney Laurence Stone was assigned by District Attorney Rebert to handle Ms. Bergdoll's trial for disorderly conduct. ADA Stone testified that he was not specifically instructed by the DA's office as to handle the case, and, using

his own discretion, decided not to drop the charges against Ms. Bergdoll. Ms. Bergdoll was ultimately acquitted of the disorderly conduct charge.

On October 10, 2008, Ms. Bergdoll initiated the instant suit and filed a Complaint. The County of York and District Attorney Rebert filed a Motion to Dismiss, which the Court granted on January 5, 2009. Ms. Bergdoll filed an Amended Complaint on May 15, 2009 in which District Attorney Rebert was not named. In the Amended Complaint, Ms. Bergdoll brought claims against the Defendants for violations of her constitutional rights under § 1983 (Counts I, IV, V, VI, VII ), malicious prosecution (Count VIII), and state law claims (Counts II, III, IX). On November 3, 2009, the Court granted County of York's Motion to Dismiss the malicious prosecution and state law claims against it, but denied the Motion as to the § 1983 claims. All Defendants have now filed Motions for Summary Judgment. The Motions have been fully briefed and are ripe for review.

## **LEGAL STANDARD**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Id.* An issue of material fact is genuine if "a reasonable jury could return a verdict for

the nonmoving party." *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

**DISCUSSION**

**I.      Officer Baez's Motion for Summary Judgment on the § 1983 Claims (Doc. 72)**

Officer Baez's Motion for Summary Judgment on Ms. Bergdoll's Fourth Amendment Excessive Force claim will be denied but the Motion will be granted as to Ms. Bergdoll's remaining Fourth Amendment claims, as well as her First, Fifth, and Fourteenth Amendment claims.

**A.      Qualified Immunity**

The Third Circuit has long recognized that "qualified immunity . . . 'provides ample protection to all but the plainly incompetent or those who knowingly violate the law'." *Bumgarner v. Hart*, 316 Fed.Appx. 201, 207 (3d Cir. 2009) (quoting *Blackhawk v. Pennsylvania*, 381 F.3d 202, 215 (3d Cir. 2004) (internal citation omitted)).

"Qualified immunity shields government officials from civil damages liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known'." *Manigault v. King*, 339 Fed.Appx. 229, 231 (3d Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Courts apply a two-step test to the defense of qualified immunity: "whether the Officers' acts violated a constitutional or statutory right, and if they did, whether that right was clearly established at the time of the violation." *Mierzwa v. United States*, 282 Fed.Appx. 973, 978 (3d Cir. 2008). The Court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 819 (2009). Regarding the second step of the test, the United States Supreme Court has held: "[f]or a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable

official would understand that what he is doing violates that right'." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal citation omitted).

### B.     Fourth Amendment Claims

Officer Baez's Summary Judgment Motion will be denied as to Ms. Bergdoll's Excessive Force claim but will be granted as to the remaining Fourth Amendment claims.

#### 1.    **Officer Baez is not entitled to qualified immunity on the Excessive Force claim.**

"To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Estate of Smith*, 318 F.3d at 515 (quoting *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir.1999)).

In providing a framework for assessing the reasonableness of a seizure, the Third Circuit has held:

> The test of reasonableness under the Fourth Amendment is whether under the totality of the circumstances, "the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations." *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989). Thus, if a use of force is objectively reasonable, an officer's good faith is irrelevant and any bad faith motivation on his part is immaterial. *See Estate of Smith*, 318 F.3d at 515; *Abraham*, 183 F.3d at 289. Factors to consider in making a determination of reasonableness include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight. *See Graham*, 490 U.S. at 396, 109 S.Ct. at 1872. A court in making a reasonableness assessment also may consider the possibility that the persons subject to the police action are violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time. *See Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir.1997).

*Kopec v. Tate*, 361, F. 3d 772, 776-77 (3d Cir. 2004).

Turning to the first prong of the qualified immunity analysis and viewing the facts in the light most favorable to the Plaintiff, the Court finds that a reasonable jury could conclude that the force employed by Officer Baez was unreasonable.  The Court cannot say that as a matter of law Officer Baez's forcing of Ms. Bergdoll to the ground and kneeling on her back while she was handcuffed was not excessive.

As to the second prong of the qualified immunity analysis, the United States Supreme Court decision addressing "reasonableness" in Fourth Amendment cases upon which *Kopec*'s analysis is based, *Graham v. Connor*, was decided in 1989.  Viewing the evidence in the light most favorable to Ms. Bergdoll, the Court finds that the parameters of the constitutional right against unreasonable seizures was clearly articulated at the time of the incident, and therefore Officer Baez is not entitled to qualified immunity on Ms. Bergdoll's Excessive Force claim.

### 2. Officer Baez is entitled to qualified immunity on the Unlawful Arrest claim

The Fourth Amendment provides that people are "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,... and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. To determine whether an arrest is valid, the Court looks to the law of the state where the arrest took place. *US v. Myers*, 308 F.3d 251, 255 (3d Cir.2002).  Under Pennsylvania law, police officers can execute warrantless arrests for felonies and any grade of theft and attempted theft. *See* 18 Pa. Cons. Stat. Ann. § 3904; *Commonwealth v. Taylor*, 450 Pa. Super. 583, 677 A.2d 846 (1996).  An arrest by a law enforcement officer without a warrant "is reasonable under the Fourth Amendment where there is probable cause to believe that a

criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 125 S.Ct. 588, 593 (2004).

While "[t]he probable-cause standard is incapable of precise definition or quantification," *Maryland v. Pringle*, 540 U.S. 366, 371 (2003), all interpretations of probable cause require a belief of guilt that is reasonable, as opposed to certain, *see Hill v. California*, 401 U.S. 797, 804 (1971). "An arrest was made with probable cause if 'at the moment the arrest was made ... the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense'." *Wright v. City of Phila.*, 409 F.3d 595, 603 (3d Cir. 2005) (quoting *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)). "Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams*, 407 U.S. 143, 149 (1972). Therefore, the evidentiary standard for probable cause is significantly lower than the standard which is required for conviction. *See Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979).

Here, the Court finds that the arrest of Ms. Bergdoll for disorderly conduct was made with probable cause. Looking at the facts and circumstances of the arrest in the light most favorable to the plaintiff, Ms. Bergdoll was arrested after arguing with Officer Baez and questioning him as to who he was "screwing" that he was at the residence investigating a code violation. Given the situation and the Ms. Bergdoll's hostile and confrontational language, which Officer Baez could have reasonably believed was both hindering his investigation and creating a potentially dangerous situation for him as well as the third party, the Court finds as a matter of law Officer Baez had probable causing in arresting Ms.

Bergdoll for disorderly conduct. Therefore, because there was no constitutional violation with respect to Ms. Bergdoll's arrest, Officer Baez is entitled to qualified immunity on the unlawful arrest claim.

### 3. Officer Baez is entitled to qualified immunity on the Malicious Prosecution claim

"To prove malicious prosecution under § 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir.2003) (quoted in *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009). Because the Court has already found the arrest of Ms. Bergdoll was made with probable cause, the elements for malicious prosecution cannot be met and Officer Baez has qualified immunity on this claim.

### C. First Amendment Retaliation Claim

Officer Baez is entitled to qualified immunity with respect to Ms. Bergdoll's First Amendment retaliation claim.

Addressing the first prong of the qualified immunity analysis, the Third Circuit has applied a three-part test to claims of governmental retaliation for engaging in protected speech in violation of the First Amendment. *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282 (3d Cir.2004). A plaintiff must prove: 1) he engaged in a protected activity; 2) the government responded with retaliation; and 3) the protected activity caused the retaliation. *Id.* Once a prima facie case has been established in a retaliation case, the defendant has

9

the opportunity to demonstrate he would have taken the same action independent of the retaliatory animus. *Hartman v. Moore*, 547 U.S. 250, 260, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006).

The Third Circuit has observed that all speech is protected by the First Amendment except for a few narrow categories such as obscenity, "fighting words," and libel. *Eichenlaub*, 385 F.3d at 282-83. The Supreme Court has recognized the First Amendment protects citizens from punishment for a wide range of speech criticizing and challenging police officers unless such speech presents a "clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." *City of Houston v. Hill*, 482 U.S. 451, 461, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987).

In 1987, the United States Supreme Court decided *Hill*, recognizing police officers must tolerate a certain amount of verbal criticism and challenge from citizens as a characteristic of a free nation as opposed to a police state. *Hill*, 482 U.S. at 462-63. The Court recognized the First Amendment protects citizens from punishment for a wide range of speech criticizing and challenging police officers unless such speech presents a "clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." *Hill*, 482 U.S. at 461.

Here, while Ms. Bergdoll's speech was protected and she was arrested a short time after making her remarks, due to Ms. Bergdoll's volatile and obstructive behavior, Officer Baez would have responded the same way independently of any retaliatory animus.  The clearest evidence of this is that Officer Baez, who in Plaintiff's own description is tall with an athletic build, required the assistance of backup to subdue Ms. Bergdoll on Ms. Whitted's porch.  Viewing the facts in a light most favorable to Plaintiff, the record shows that it was not Ms. Bergdoll's speech that led to her arrest, but her aggressive  and confrontational

behavior.  Therefore, no constitutional violation has been established and Officer Baez is entitled to qualified immunity on the First Amendment Retaliation claim.

### D. Ms. Bergdoll's Fifth and Fourteenth Amendment Claims

Officer Baez is entitled to Summary Judgment on Ms. Bergdoll's Fifth and Fourteenth Amendment claims.

The Fifth Amendment states:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. Const., Amdt. 5.  The Due Process Clause of the Fifth Amendment only applies to federal officials. *See, e.g., Nguyen v. U.S. Catholic Conference*, 719 F.2d 52 (1983).  With respect to the Fourteenth Amendment, "[t]he Supreme Court has held that when government behavior is governed by a specific constitutional amendment, due process analysis is inappropriate." *Berg v. County of Allegheny*, 219 F.3d 260, 269 (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 842-43 (1998)).

Here, since Officer Baez is a *state* official, he is entitled to judgment as a matter of law on Ms. Bergdoll's Fifth Amendment claim against him.  Furthermore, since the acts in question have been fully analyzed under the Fourth Amendment, a Due Process analysis under the Fourteenth Amendment is unwarranted and inappropriate and therefore Summary Judgment will be granted Officer Baez on this claim as well.

### II. Officer Baez's Motion for Summary Judgment on the State Law Claims (Doc. 72)

Officer Baez is immune from suit on Ms. Bergdoll's state law claims under the

11

Political Subdivision Torts Claims Act because there is no evidence of willful misconduct.

The Political Subdivision Tort Claims Act grants the City governmental immunity from liability for any damages resulting from an injury to a person or property caused by any act of the City, its employee, or any other person, except as specifically provided for under 42 Pa.C.S.A. § 8542. This immunity extends to an employee of the City who is liable for civil damages caused by acts which are within the scope of his office or duties. However, an employee's immunity does not extend to acts that are judicially determined to be crimes, actual fraud, actual malice, or willful misconduct. 42 Pa.C.S.A. § 8550.

The Pennsylvania courts have routinely held that "willful misconduct" means essentially "willful misconduct aforethought." *See Renk v. City of Pittsburgh*, 537 Pa. 68 (1994)*; Pettit v. Namie* 931 A. 2d 790, 800 (Pa. Cmwlth. 2007).

Here, Officer Baez is immune from suit on Ms. Bergdoll's assault, battery, and other state law claims because Ms. Bergdoll has presented no evidence that Officer Baez *intended* to commit any type of intentional tort against Ms. Bergdoll. In other words, to those claims to which the Political Subdivisions Tort Claims Act does not provide blanket coverage, i.e. the assault and battery claims, there is no evidence of willful misconduct aforethought or intentional misconduct on the part of Officer Baez.

### III.   County of York's Motion for Summary Judgment (Doc. 58)

Summary Judgment will be granted to the County of York as to Ms. Bergdoll's §1983 claims. Ms. Bergdoll's § 1983 claims against the County can be divided into two distinct categories: on the one hand she has alleged that they are responsible for the actions of Officer Baez, and on the other she has alleged that the County, in the person of the District Attorney's office, had a policy of ignoring citizen complaints against the police department and also used the complaint she filed against her in her summary offense trial for disorderly

12

conduct. In other words, Ms. Bergdoll has claimed the County is liable under §1983 for actions of various individuals both before and after her arrest. However, Ms. Bergdoll has presented no evidence to support any of these theories.

The United States Supreme Court has held that a municipality may be a "state actor" for purposes of liability under § 1983. "A municipality may not be held liable under § 1983 for the constitutional torts of its employees by virtue of *respondeat superior.* Rather, a municipality may be held liable for the conduct of an individual employee or officer only when that conduct implements an official policy or practice." *Monell v. New York City Dept. of Social Services*, 98 S.Ct. 2018 (1978).

Actions by persons with final authority for making a decision within the municipal entity constitute official policy for purposes of § 1983. *See Pembauer v. City of Cincinnati,* 475 U.S. 469, 483-484, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) ("municipal liability under § 1983 attaches where-and only where-a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question"). The Third Circuit has further held:

> An individual's conduct implements official policy or practice under several types of circumstances, including when (1) the individual acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, (2) the individual himself has final policy-making authority such that his conduct represents official policy, or (3) a final policy-maker renders the individual's conduct official for liability purposes by having delegated to him authority to act or speak for the government, or by ratifying the conduct or speech after it has occurred.

*Hill v. Borough of Kutztown*, 455 F.3d 225. 245 (3d Cir. 2006).

Alternatively, to establish liability for a failure to train, a plaintiff must identify a municipal policy or a custom that amounts to "deliberate indifference" to the rights of the citizens. *City of Canton v. Harris*, 489 U.S. 378 (1989).

13

Here, with respect to the incident that occurred on October 12, 2006, besides summary legal conclusions and bald allegations, Ms. Bergdoll has provided no evidence that either the County of York or the District Attorney's office had any involvement at all, either by law or *de facto*, in the training, supervision, and oversight of City of York Police Department officers, or that Officer Baez's alleged constitutional violations were the result of his following an official or unofficial policy, practice or custom sanctioned by the County or the District Attorney's office.

Likewise, Ms. Bergdoll has not presented any evidence that the District Attorney's office improperly ignored her complaint against Officer Baez, had a policy of ignoring these complaints, or used the complaint against her at her disorderly conduct trial in violation of her Fifth Amendment right against self-incrimination.  Assistant District Attorney Stone, who prosecuted Ms. Bergdoll for disorderly conduct, testified that he was not given any special instructions by the District Attorney or anyone else as to how to handle the case or whether or not he should prosecute Ms. Bergdoll.  Mr. Stone also testified that all normal procedures were followed in his handling of the case.  As a result, County of York's Motion for Summary Judgment will be granted.

**IV.    City of York's, Mark L. Whitman's, and Wesley Kahley's Motion for Summary Judgment (Doc. 72)**

The Motion for Summary Judgment brought by the City of York, Mark Whitman, and Wesley Kahley on Ms. Bergdoll's federal and state claims will be granted.

With respect to Ms. Bergdoll's §1983 claims against the City of York, she has not presented any evidence that Officer Baez was acting according to policy or customs set by the City, or that the City were deliberately indifferent in failing to properly train Officer Baez in proper police procedure.  The City, on the other hand, has brought forth extensive evidence with respect to Officer Baez's training in the proper use of force and

14

related police procedures.  Again, §1983 does not provide for liability under a theory of *respondeat superior*, nor can a single alleged violation of a citizen's rights establish a policy or custom, or a failure to train.

Turning to Ms. Bergdoll's §1983 claims against Messrs. Whitman and Kahley, she has failed to present evidence showing that they were policymakers, that they were personally involved in Officer Baez's alleged constitutional violations, or that they were deliberately indifferent to the risk of the alleged constitutional violation.  The record shows that Ms. Bergdoll's complaint against Officer Baez was investigated by the Internal Affairs department and that action was not taken against Officer Baez by the department once they decided that Officer Baez followed proper procedure.  Conjecture and pointing to a few emails taken out of context does not counter the extensive record developed by the Defendants.

As to Ms. Bergdoll's state law tort claims, the Defendants are immunized from suit under the Political Subdivision Torts Claims Act.

As discussed above, the Political Subdivision Tort Claims Act grants the city governmental immunity from liability for any damages resulting from an injury to a person or property caused by any act of the city, its employee, or any other person, except as specifically provided for under 42 Pa.C.S.A. § 8542. This immunity extends to an employee of the city who is liable for civil damages caused by acts which are within the scope of his office or duties.  However, an employee's immunity does not extend to acts that are judicially determined to be crimes, actual fraud, actual malice, or willful misconduct. 42 Pa.C.S.A. § 8550.

Here, the City of York is covered under the Act because it cannot be held liable for intentional torts and none of the exceptions apply for the state law claims sounding in

15

negligence.  42 Pa.C.S.A. § 8542.  Messrs. Whitman and Kahley are covered under the Act since there has been no evidence presented that they acted with willful misconduct aforethought.

**V.     Motion to Disqualify Counsel (Doc. 55)**

The Court will not disqualify Ms. Bergdoll's counsel, John G. Bergdoll, because he is unlikely at this point to be a witness at trial.

Rule 3.7(a) of the Pennsylvania Rules of Professional Conduct, adopted by the Middle District of Pennsylvania pursuant to Local Rule 83.23.2, states: "A lawyer shall not act as advocated at a trial in which the lawyer is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client."

Here, since the only claim that will go to trial at this point is Plaintiff's claim for Excessive Force – a claim arising out of events of which John G. Bergdoll has no personal knowledge – it is highly unlikely that he will be called as a witness.  Therefore, his disqualification is unwarranted.

## **CONCLUSION**

For the reasons stated above, Defendants' Motions for Summary Judgment (Doc. 58 and 72) are granted in part and denied in part.  Defendant Baez's Motion for Summary Judgment is denied as to Plaintiff's Excessive Force claim, but granted as to Plaintiff's remaining claims.  The Motions for Summary Judgment brought by the County of York, the City of York, and Messrs. Whitman and Kahley are granted.  Finally, the Motion to Disqualify Plaintiff's Counsel is denied.  As a point of clarification, the only claim remaining in the suit at this point is Plaintiff's claim for Excessive Force against

Defendant Baez.

    An appropriate order follows.

| | |
|---|---|
| <u>4/27/11</u> | <u>/s/ A. Richard Caputo</u> |
| Date | A. Richard Caputo |
| | United States District Judge |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHARLOTTE BERGDOLL,<br><br>     Plaintiff,<br><br>          v.<br><br>CITY OF YORK, THE HONORABLE JOHN S. BRENNER, MAYOR, Individually and as Mayor for the City of York, MARK L. WHITMAN, Individually and as Police Commissioner for the City of York, WESLEY KAHLEY, Individually and as Police Captain of Operations for the City of York, POLICE OFFICER A. BAEZ, Individually and as a Police Officer for the City of York, COUNTY OF YORK, H. STANLEY REBERT, Individually and as District Attorney for the County of York,<br><br>     Defendants. | CIVIL ACTION NO. 3:08-CV-1879<br><br>(JUDGE CAPUTO) |

## ORDER

**NOW**, this    27th    day of April 2011, **IT IS HEREBY ORDERED** that the Motions for Summary Judgment brought by Defendants County of York, City of York, and Messrs. Kahely and Whitman are **GRANTED**. Defendant Baez's Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**: Summary Judgment is **denied** Defendant Baez on Plaintiff's Excessive Force claim, but **granted** on Plaintiff's remaining claims. The Motion to Disqualify Plaintiff's counsel is also **denied**.

                                                                                          /s/ A. Richard Caputo
                                                                                          A. Richard Caputo
                                                                                          United States District Judge